### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 17-34514 |
| | (Chapter 7) |
| Michael A. Damko, | |
| Debtor. | |
| | Adv. Pro. No. _____ |
| Patterson Dental Supply, Inc., | |
| Plaintiff, | |
| v. | |
| Michael A. Damko, | |
| Defendant. | |

### COMPLAINT OF PATTERSON DENTAL SUPPLY, INC. OBJECTING
### TO DISCHARGABILITY OF A DEBT PURSUANT TO SECTION
### 523 OF THE BANKRUPTCY CODE

Plaintiff, Patterson Dental Supply, Inc., (the "**Plaintiff**") by and through its undersigned counsel, for its complaint objecting to dischargeability pursuant to 11 U.S.C. §523 against Michael A. Damko (the "**Defendant**"), states and alleges as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over the subject matter for this proceeding pursuant to 28 U.S.C. §1334(b), 157(a) and (b)(1) and 11 U.S.C. §523.

2.      This adversary proceeding relates to the Chapter 7 case of Defendant, Case No. 17-34514, pending in the United States Bankruptcy Court for the Northern District of Illinois, filed on November 17, 2017.

3.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1409 because Defendant's bankruptcy case is pending in the Northern District of Illinois.

4.      Plaintiff has standing to bring this action under 11 U.S.C. § 523(a)(6) and Fed. R. Bankr. P. 7001(6).

5.      The Plaintiff's Complaint against Defendant constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I) because Plaintiff is seeking a determination of the nondischargeability of a debt.

6.      The deadline to file an objection to discharge pursuant to 11 U.S.C. §727 is February 12, 2018.

## OBJECTION TO DISCHARGABILITY OF DEBT
## PURSUANT TO 11 U.S.C. §523(a)(6)

7.      Plaintiff is a Minnesota corporation that sells dental equipment to licensed dentists throughout the country.

8.      Defendant is a dentist licensed to practice in the State of Illinois.

9.      Plaintiff sold dental equipment to defendant pursuant to a contract (#xx8376) dated December 18, 2008, a copy of which is attached to the Complaint herein as *Exhibit 1* (the "**Contract**").  The specific items of dental equipment sold under the Contract, (the "**Equipment**") are more particularly described on Schedule A to *Exhibit 1*.

10.     Under the terms of the Contract, defendant granted plaintiff a purchase-money security interest in the Equipment.

11.     Plaintiff perfected its first security interest in the Equipment as evidenced by the UCC-1 financing statement filed December 22, 2008 as No. 13901449 and amended by the UCC financing statement amendment filed July 18, 2013 as No. 9251730.

12.     Defendant breached the Contract by failing to make the required installment payments when due.

13.     Plaintiff accelerated the indebtedness owed under the Contract as a result of Defendant's breach.

14.     As of November 21, 2016, Defendant owed Plaintiff the sum of $122,717.66 under the Contract.

15.     Defendant agreed that he would not sell or otherwise dispose of the Equipment without the consent of the Plaintiff unless and until all the Contract indebtedness has been paid.

16.     Sometime in December 2015, Defendant, without the knowledge or consent of Plaintiff, willfully and maliciously, and with intent to deprive Plaintiff of its security, sold, transferred, conveyed or otherwise disposed of the Equipment.

17.     The value of the Equipment at the time of the sale, transfer, conveyance or disposal was not less than $30,000.00.

18.     Defendant acted with full knowledge that the sale, transfer, conveyance or disposal of the Equipment which Plaintiff had a right to possess and sell, and the retention of proceeds therefrom, constituted willful and malicious injury to the property of Plaintiff.

19.     Defendant agreed to pay all Plaintiff's reasonable attorney fees, court costs and other expenses arising out of or any default or exercise of any Contract remedies.

20.     Under §523(a)(6) of the Bankruptcy Code, the debt owed by Defendant to Plaintiff is non-dischargeable.

Wherefore, Plaintiff prays this Court for the entry of an order declaring that the debt owed by Michael A. Damko to Patterson Dental Supply, Inc. in an amount to be determined but in no event less than $30,000.00, to be nondischargeable under §523(a)(6) of the Bankruptcy Code, together with an award of attorney fees, costs and expenses and for such other relief as the Court deems just.

**ASHEN/FAULKNER**

Dated: January 24, 2018                     By: /s/ Deborah S. Ashen
                                            **Deborah S. Ashen, Bar # 6200415**
                                            217 N. Jefferson Street, Suite 601
                                            Chicago, IL  60661
                                            Telephone: (312) 655-0800
                                            Facsimile: (312) 655-0801
                                            dsa@ashenlaw.com

**PATTERSON DENTAL**

**Installment Sale Contract - Security Agreement**
Effective Date: December 18, 2008

0376

| | |
|---|---|
| **Seller** | **Buyer** |
| Name   PATTERSON DENTAL SUPPLY, INC. | Name  Michael A. Damko |
| Address   1031 Mendota Heights Road | Address  Winthrop Harbor Dental |
| St. Paul, MN 55120 | 1001 Sheridan Road |
| | Winthrop Harbor, IL 60096-1635 |

This Installment Sale Contract - Security Agreement ("Agreement") is entered into by and between the Seller and Buyer as of the Effective Date. Seller and Buyer agree as follows:

**1. Property Sold**  Seller hereby sells and Buyer (jointly and severally, if more than one) hereby purchases the Property described on the attached Schedule A(s) on a time price basis at the Time Sale Price. Buyer has elected not to pay the Cash Price stated below.

**2. Time Sale Price Computation**

| | | |
|---|---|---:|
| a. Total Cash Price | $ | 110,746.00 |
| b. Taxes (if Any) | $ | 9,136.46 |
| c. Official Fees (Filing Fees, Recording Fees, etc.) | $ | 60.00 |
| d. Installation Charges | $ | |
| e. Down Payment......(1) Cash | $ | |
|  (2) Trade-in | $ | |
|  (3) Total Down Payment (1) + (2) | $ | |
| f. Balance (a. + b. + c. + d. - e.) | $ | 119,931.46 |
| g. Time Price Differential | $ | 25,803.14 |
| h. Time Balance (f. + g.) | $ | 145,734.60 |
| i. Time Sale Price (h. + e. (3)) | $ | 145,734.60 |

**3. Payment Schedule**  Buyer agrees to pay the Time Balance in   SEVENTY-TWO   consecutive monthly payments commencing on the thirtieth day following the Effective Date and continuing on the same day each month thereafter until paid. Buyer will send monthly payments to Seller's address above or to any other address Seller specifies. The consecutive Monthly Payments shall be:

| | | | | | |
|---|---|---|---|---|---:|
| | 1 | to | 12 | inclusive | $0.00 |
| then | 13 | to | 72 | inclusive | $2,428.91 |
| then | | to | | inclusive | |

except the last which shall be the Time Balance then unpaid. If any Monthly Payment is not received by the Seller when due, Seller may charge an administrative late fee of up to 1-1/2% per month calculated on the amount of the past due Monthly Payments. Payments not received timely can increase the stated Time Price Differential.

**4. Delivery and Acceptance of Property**  The Property has been delivered by Seller to Buyer's address set forth above, unless otherwise noted. Buyer has accepted the Property. Seller shall not be liable or responsible for any failure or delay in installation of Property for whatever reason. Location of Property if not at the Buyer's address above:

_____     _____
address                                    city, state zip

EXCLUSION OF EXPRESS OR IMPLIED WARRANTIES - SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE PROPERTY. NOTHING HEREIN SHALL BE CONSTRUED AS A WAIVER BY BUYER OF ANY WARRANTY WHICH MAY BE PROVIDED BY THE MANUFACTURER OF ANY PROPERTY, BUT BUYER'S SOLE REMEDY FOR ALLEGED DEFECTS IN THE DESIGN OR THE MANUFACTURE OF THE PROPERTY SHALL BE AGAINST THE MANUFACTURER.
BUYER AND SELLER AGREE THAT THE ADDITIONAL TERMS AND CONDITIONS ON THE REVERSE SIDE HEREOF ARE PART OF THIS AGREEMENT.

Notwithstanding the signature(s) on this Agreement may indicate a representative capacity, the individual(s) signing below for the Buyer agree(s), in order to induce the Seller to enter into this Agreement, to unconditionally guarantee payment and performance of all liability of Buyer to Seller under this Agreement, whether now existing or hereafter incurred. Each reference to "Buyer" in this Agreement shall include the individual(s) signing below as the Guarantor(s). Additional terms and conditions of Guaranty are on the reverse side hereof in Section 10.

**AGREED AND ACCEPTED BY SELLER**

Seller: Patterson Dental Supply, Inc.

By: _____

F-737 20246 (8-08) Xsbd

**AGREED AND ACCEPTED BY BUYER**

Buyer: Michael A. Damko

By: _____

By: _____

**EXHIBIT 1**

**5. Security Interest**   In order to secure its obligations to Seller under this Agreement, Buyer hereby grants to Seller a security interest in the Property and all additions, accessories, supplements and substitutions (if any) and all proceeds, including amounts payable under insurance policies. Buyer represents and agrees that, except for the security interest hereby granted, Buyer is the owner of the Property free from any lien, security interest or encumbrance, and that Buyer will defend the Property against all claims and demands of all persons at any time claiming the same or any interest therein. Buyer further represents and agrees that there does not and will not exist any lien, security interest or encumbrance, whether or not filed in any public office, which affects or purports to affect the Property and Buyer will take such other action as Seller deems necessary or desirable to create, perfect and maintain Seller's security interest. Buyer shall not remove the Property from the designated location or sell or transfer any interest in the Property without written consent of Seller. Buyer shall not affix Property to any real estate now or at any time hereafter. The Property shall remain personal property regardless of whether affixed or attached to any building or structure in violation of the terms hereof. No transfer, renewal, extension or assignment by Seller of any interest under this Agreement shall release Buyer from any liability hereunder.

**6. UCC Filings**   Buyer and Seller agree that a reproduction of this Agreement may be filed as a financing statement and shall be sufficient as a financing statement under the Uniform Commercial Code. Buyer hereby ratifies all action of the Seller in executing and filing a financing statement prior to the execution of this Agreement. Buyer shall execute and deliver to Seller, upon Seller's request, such other documents as Seller deems necessary or advisable for the protection or perfection of this Agreement and Seller's rights hereunder and shall pay all costs incident thereto. Buyer irrevocably appoints Seller, its assignee, as designee as Buyer's attorney-in-fact to sign any such filings.

**7. Prepayment Credit**   Buyer may pay part or all of the remaining Balance at any time without penalty. In such event, the Buyer will obtain a partial credit of the Time Price Differential calculated according to the daily simple interest method. Buyer will receive a full credit of the Time Price Differential if the Balance is received by Seller within 30 days of the Effective Date (hereinafter referred to as "Official Time").

**8. Taxes and Other Charges**   Buyer shall pay when due, and defend and indemnify Seller against liability for, all fees, charges, assessments and taxes of any kind now or hereafter imposed by any governmental entity upon this Agreement or on the disposition of Property.

**9. Indemnity**   Buyer shall bear all risk of loss with respect to the Property and indemnify, hold harmless and defend Seller against any liability and expenses arising out of the manufacture, ordering, purchase, acceptance, ownership, sale, filing, possession, operation, use, return or other disposition of Property, including patent or label defects, any claims based on absolute tort liability, warranty or patent, trademark or copyright infringement. The covenants and indemnities contained in this Section 9 and Section 5 shall survive the termination of this Agreement and shall be payable by Buyer within 7 days of Seller's written demand therefore.

**10. SELLER'S LIMITATION OF LIABILITY.**   SELLER IS NOT RESPONSIBLE FOR REPAIRS OR SERVICE TO THE PROPERTY, DEFECTS OR FAILURES IN THE OPERATION THEREOF, OR FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES. BUYER HAS MADE THE SELECTION OF EACH PROPERTY ITEM BASED ON ITS OWN JUDGMENT AND EXPRESSLY DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY THE SELLER. SELLER HEREBY ASSIGNS TO BUYER ANY REPRESENTATIONS, COVENANTS AND WARRANTIES OF THE MANUFACTURER OF THE PROPERTY BUT ANY ACTION TAKEN BY BUYER BY REASON OF THE ASSIGNMENT SHALL BE AT BUYER'S SOLE EXPENSE.

**11. Buyer's Representations and Warranties.**  Buyer represents and warrants that: (a) Buyer is duly organized, existing, in good standing and qualified to do business wherever required; (b) this Agreement has been duly authorized and executed by Buyer and any Guarantor and is the legal, valid and binding obligation of Buyer and any Guarantor, enforceable against them in accordance with its terms; and (c) Buyer will use the Property solely in the operation of its business (and not for any personal, household or family purposes), for the purpose intended, in compliance with all applicable laws, and at the location stated in Section 4.

**12. Default**   Buyer shall be in default of this Agreement upon (a) failure to make a payment within 10 days after the due date; or (b) failure to perform or observe any term or condition of this Agreement which continues for 10 business days after the notice thereof to Buyer or (c) any representation or warranty made by Buyer is materially incorrect or (d) the Buyer deems itself insecure; or (e) default by Buyer under any note, security agreement, lease or conditional sales agreement whether with Seller or any third party; or (f) Buyer shall generally not pay its debts when due, the dissolution or insolvency of Buyer, or a proceeding in bankruptcy or insolvency is commenced by or against Buyer or (g) Buyer dies or Buyer terminates its existence by merger, consolidation or otherwise.

**13. Remedies**   Upon default, Seller may exercise any or all of the following remedies with respect to any or all Property, including all additions, accessories, supplements, substitutions and proceeds: (a) enter the Property location and take immediate possession of and remove the Property by summary proceedings or otherwise, all without liability to Seller for or by reason of damage to Buyer's property or such entry or taking possession; (b) sell any or all of the Property at public or private sale, or otherwise dispose of the Property (c) remedy such default for the account of and at the expense of the Buyer; (d) without further notice or demand, accelerate and declare all sums due under this Agreement and all other obligations of Buyer to Seller immediately due and payable and (e) exercise any other right or remedy at law, or in equity or bankruptcy, including specific performance or damages for the breach hereof. Seller agrees to pay all reasonable attorney fees, court costs and other expenses incurred by Seller arising out of any default or the exercise of any remedies hereunder. To the extent permitted by law, Buyer expressly waives notice of any of the foregoing remedies or events of default. Each remedy shall be cumulative and in addition to any other remedy referred to above or otherwise available to Seller at law or in equity. Buyer shall remain fully liable for any deficiency. No express or implied waiver by any default shall constitute a waiver of any of Seller's other rights. If notice of any disposition of the Property is required by law, Buyer and Seller agree that ten (10) days notice is reasonable and sufficient. Seller may apply proceeds at the Property to payment of reasonable attorney fees, court costs and other expenses of collection.

**14. Use of Property**   Buyer will operate Property according to manufacturer's manuals or recommended procedures and in compliance with applicable laws. Buyer shall keep the Property in good condition and working order, at all or part of the Property shall become lost, stolen, destroyed, damaged beyond repair, until for use for any reason, or part of a condemnation, confiscation, seizure or requisition of the Property, and (a) replace the Property with like Property of equal or greater value (which Property shall automatically be subject to the security interest of Seller) or (b) pay Seller an amount equal to the outstanding Time Balance.

**15. Insurance**   Buyer shall procure and maintain at its expense, insurance with responsible insurers, satisfactory to Seller, insurance coverage that include (a) Comprehensive General Liability and (b) All Risk Physical Damage in an amount not less than the greater of the replacement value of the outstanding Time Balance. Seller shall be named as loss payee and additional insured. Buyer waives Buyer's rights and its insurance carrier's right to subrogation against Seller for any and all loss or damage. All policies shall contain a clause requiring the insurer to furnish Seller with at least 30 days prior written notice of any material change, cancellation or non-renewal of coverage. Upon request by Seller, Buyer shall furnish Seller with a certificate of insurance or other evidence satisfactory to Seller that such insurance coverage is in effect.

**16. Guaranty**   Each Guarantor agrees that this is a guaranty of payment and performance not of collection. Each Guarantor's liability shall not be affected by any inability to or unenforceability of any liabilities under this Agreement, or any collateral security for them, or any change, alteration, renewal, extension, continuation, compromise, waiver or other modification of such liabilities. Each Guarantor waives notice of any of the foregoing, and waives notice of acceptance of the guaranty and of presentment and demand for payment of any of the liabilities of Buyer under this Agreement, protest and notice of dishonor or default to each Guarantor or any other party with respect to such liabilities and all notices, demands, set-offs, counterclaims and defenses of any nature whatsoever. This guaranty may be enforced by Seller without first proceeding against Buyer or any other party or any security. Each Guarantor agrees not to demand, take steps for the collection of, or assign, transfer or otherwise dispose of any liability owed by Buyer to such Guarantor, and waives all rights of subrogation with respect hereto. Seller shall have the sole right to demand, receive, sue for, collect, receipt for and give full discharge of such indebtedness until all of the liabilities of Buyer to Seller under this Agreement have been satisfied in full.

**17. Miscellaneous**   Any provision of this Agreement which is unenforceable shall not affect the enforceability of the remaining provisions hereof. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given. TIME IS OF THE ESSENCE IN THIS AGREEMENT. The parties intend to comply with applicable law regarding the collection of the Time Price Differential. If applicable law limits the enforceability of the Time Price Differential, then the Time Price Differential shall be deemed reduced to the maximum allowable under applicable law computed from the date hereof until payment, and any payments made in respect of the Time Price Differential which are in excess of that permitted under applicable law shall be credited to the Balance, or if the Balance has been repaid, returned to the Buyer. This Agreement shall be governed by Minnesota state law, except that the laws of the state where the Property is located shall govern the enforceability of the Time Price Differential if the laws of such state permit the collection of a higher Time Price Differential than Minnesota law permits. This written Agreement constitutes the entire agreement of the parties with respect to its subject matter. All amendments and waivers shall be written and signed by the Buyer and Seller. This Agreement will not be binding on Seller until accepted and executed by Seller. Any notices required hereunder shall be in writing and sent by certified mail postage prepaid to the address of the party stated above or such other address as a party may designate by written notice, and shall be effective when mailed. This Agreement is assignable by Seller without notice to Buyer. IN THE EVENT OF ANY ASSIGNMENT HEREOF BY SELLER, BUYER WAIVES ANY AND ALL DEFENSES, CLAIMS, COUNTERCLAIMS AND OFFSETS OF ANY NATURE WHATSOEVER WITH RESPECT TO BUYER'S LIABILITIES UNDER THIS AGREEMENT. Buyer may not assign this Agreement or its rights or obligations hereunder. If more than one Buyer executes this Agreement, their obligations shall be joint and several.

PAGE 1

## PATTERSON
### DENTAL

REPRINT

**INVOICE**   1448374

| | | |
|---|---|---|
| SOLD TO | WINTHROP HARBOR DENTAL DR MICHAEL DAMKO 1001 SHERIDAN RD WINTHROP HARBOR, IL 60096-1635 | CHICAGO BRANCH 1224 MICHAEL DR./SUITE B WOOD DALE, IL 60191-1056 (630) 616-8202 |

PHONE:

CUST/SHIP: 794

PURCHASE ORDER #

| DEPARTMENT | ACCOUNT TYPE | | | | | DATE |
|---|---|---|---|---|---|---|
| EQUIPMENT | EQUIP | | | | | 12/17/08 |

TAX:

| ITEM NO | ORDERED | SHIPPED | DESCRIPTION | UM | PRICE | AMOUNT | CODES |
|---|---|---|---|---|---|---|---|
| 755114 | | | SIRONA  CEREC  ACQUISITION 58 51 055  80168 | EA | 43775.00 | 43775.00 | 08 |
| 755147 | 1 | 1 | SIRONA  CEREC    60 78 168 MCXL MILLING UN 108008 | EA | 66000.00 | 66000.00 | T 08 |

## SCHEDULE A

| SUBTOTAL | STATE TAX (18) | LOCAL TAX (18) | | D/F/P (18) | FREIGHT (12) | TOTAL |
|---|---|---|---|---|---|---|
| 109,775.00 | 6,921.56 | 2,814.90 | 0.00 | 0.00 | 750.00 | 119,601.46 |

REMARKS

THANK YOU FOR YOUR ORDER PER LARRY & ALAN, CB
INSTALL 12/18/08        **Thank you**

Shipped Via:

CODES:  T-Taxable
P-Previous Back Order
Patterson Office Shipped: 1-800-283-4044
R-TA3 / 20008

### NO CREDIT ISSUED WITHOUT INVOICE NUMBER AND DATE